**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ATHEENA WAGNER, Individually and on Behalf of All Others Similarly Situated, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Case No. 1:20-cv-03014 |
| SPEEDWAY LLC, | * * | |
| Defendant. | * | |

<u>**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**</u>

Respectfully submitted,

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**Stephan Zouras, LLP**
222 W. Adams Street, Suite 2020
Chicago, Illinois 60606
312-233-1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

**Attorneys-In-Charge for Plaintiffs**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................. I

TABLE OF AUTHORITIES ........................................................................................ III

INTRODUCTION ......................................................................................................... 1

I.       PROCEDURAL HISTORY ................................................................................. 1

II.      THE SETTLEMENT AGREEMENT ................................................................. 3

III.     THE COURT SHOULD CERTIFY THE PROPOSED RULE 23 AND FLSA
        SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ............................. 6

      A.    The Proposed Settlement Class Satisfies the Requirements of Rule
           23(a). ......................................................................................................... 7

            1.    The Proposed Settlement Class Is Sufficiently Numerous. ................. 8

            2.    The Proposed Settlement Class Meets the Commonality
                 Requirement. ..................................................................................... 8

            3.    The Proposed Settlement Class Meets the Typicality
                 Requirement. ..................................................................................... 9

            4.    Plaintiff and Her Counsel Will Adequately Represent the
                 Proposed Settlement Class Members. ............................................... 10

      B.    The Proposed Settlement Class Satisfies Rule 23(b)(3). ................................ 12

            1.    Predominance. .................................................................................. 12

             2.    Superiority. ....................................................................................... 12

      C.    FLSA Certification Is Also Warranted. ......................................................... 13

IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE PARTIES'
        PROPOSED SETTLEMENT ......................................................................... 14

      A.    The Legal Standard for Preliminary Settlement Approval. ............................ 14

            1.    Plaintiff and Proposed Class Counsel Have Adequately
                 Represented the Settlement Class Members. ..................................... 15

            2.    The Settlement Was Reached as a Result of Arm's-Length
                 Negotiations Between the Parties. ..................................................... 19

3.      The Settlement Treats All Settlement Class Members Equally............20

4.      The Relief Secured for the Settlement Class Is Adequate and
        Warrants Approval..............................................................................21

        a.      The strength of Plaintiff's case and the risk of further
                litigation support preliminary approval. ................................21

        b.      The method of distributing relief to the Settlement Class
                Members is effective and supports preliminary approval........23

        c.      The terms of the requested attorneys' fees are
                reasonable. ............................................................................24

B.      The Parties' Proposed Notice Plan Merits Approval. .....................................25

1.      The Court Should Appoint CPT Group as the Settlement
        Administrator. ......................................................................................26

2.      The Court Should Appoint Plaintiff's Counsel as Class Counsel. .......26

V.      THE FLSA SETTLEMENT AND RELEASE ARE FAIR AND
        REASONABLE ..............................................................................................27

VI.     CONCLUSION..............................................................................................27

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                                    **<u>Page(s)</u>**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011)...........................................16

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................................6, 11, 12

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184 (2013) ...............................7

*Arreola v. Godinez*,
   546 F.3d 788 (7th Cir. 2008) ....................................................................................7

*Barnes v. Air Line Pilots Ass'n, Int'l*,
   310 F.R.D. 551 (N.D. Ill. 2015) ................................................................................8

*Beaton v. SpeedyPC Software*,
   907 F.3d 1018 (7th Cir. 2018) ..................................................................................9

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ................................................................................21

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ........................................................................................23, 25

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179 (2011)............................................................................................7

*Espenscheid v. Direct Sat USA, LLC*,
   688 F.3d 872 (7th Cir. 2012) ..................................................................................21

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ...........................................................................21

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ..................................................................................14

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) ..............................................................................................11

*Gumm v. Ford*,
   No. 5:15-cv-41-MTT, 2019 WL 479506 (M.D. Ga. Jan. 17, 2019)....................................15

*Hale v. State Farm Mut. Auto. Ins. Co.*,
   No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) .........................................15

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) ........................................................................15

*In re AT & T Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011)................................................................22

*In re Scientific Drilling International, Inc. Fair Labor Standards Act (FLSA) Litigation*,
   24 F. Supp. 3d 1364 (JPML June 4, 2014) ..........................................................8

*Kaufman v. Am. Express Travel Related Servs., Co.*,
   No. 07-CV-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016) ............................17

*Kurgan v. Chiro One Wellness Centers LLC*,
   No. 10-cv-1899, 2014 WL 642092 (N.D. Ill. Feb. 19, 2014)................................8

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*,
   No. 00 C 5755, 2001 WL 1403007 (N.D. Ill. Nov. 7, 2001)..............................13

*Lynn's Food Stores, Inc. v. Dep't of Labor*,
   679 F.2d 1350 (11th Cir. 1982) ...................................................................13, 14

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ...........................................................................................20

*Osada v. Experian Info. Sols., Inc.*,
   290 F.R.D. 485 (N.D. Ill. 2012) ........................................................................11

*Quiroz v. Revenue Prod. Mgmt., Inc.*,
   252 F.R.D. 438 (N.D. Ill. 2008) ........................................................................11

*Retired Chi. Police Ass'n v. City of Chi.*,
   7 F.3d 584 (7th Cir. 1993) .................................................................................11

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011).................................................................22

*Schulte v. Fifth Third Bank*,
   No. 09-CV-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010)........................20

*Snyder v. Ocwen Loan Servicing, LLC*,
   No. 14 c 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ......................15, 16

*Spano v. The Boeing Co.*,
   633 F.3d 574 (7th Cir. 2011) ...............................................................................9

*Starr v. Chi. Cut Steakhouse*,
  75 F. Supp. 3d 859 (N.D. Ill. 2014)................................................................11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ........................................................................15

*Velez v. Majik Cleaning Serv., Inc.*,
  No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) .......................21

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011).....................................................................................8

*Walton v. United Consumers Club, Inc.*,
  786 F.2d 303 (7th Cir. 1986) .........................................................................13

*Woods v. NY Life Ins. Co.*,
  686 F.2d 578 (7th Cir. 1982) .........................................................................14

*Wright v. Nationstar Mortg. LLC*,
  No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016)..........................19

**Statutes**
29 U.S.C. § 216(b) ..........................................................................................7, 24

29 U.S.C. § 256...................................................................................................23

Fair Labor Standards Act,
  29 U.S.C. § 201, *et seq.* ..................................................................................1

Illinois Minimum Wage Law,
  820 ILCS § 105/1, *et seq.* ..............................................................................1

**Rules**
Fed. R. Civ. P. 23,
  Advisory Committee's Note to 2018 Amendment .............................................15

Fed. R. Civ. P. 23(a) ..............................................................................7, 8, 9, 10

Fed. R. Civ. P. 23(b)(3).................................................................................12, 13

Fed. R. Civ. P. 23(c) ...........................................................................................25

Fed. R. Civ. P. 23(e) ......................................................................................passim

**Treatises**
4 NEWBERG ON CLASS ACTIONS § 13:1 (5th ed) ..................................................14

v

*Manual for Complex Litigation* (Fourth) §§ 21.632-33 (2008) ....................................................6

*Moore's Federal Practice* (Third) § 23.83[1] (1997) ...............................................................23

## INTRODUCTION

Atheena Wagner ("Plaintiff") submits this Motion and Memorandum in support of her Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement. Plaintiff respectfully asks this Court to preliminarily approve the Parties' proposed settlement and authorize prompt dissemination of their proposed Settlement Notice to all members of the federal collective and Illinois state class.

This matter involves a putative collective and class action lawsuit for alleged non-payment of required overtime and other remedies, brought under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, *et seq.* Plaintiff contends that Defendant Speedway LLC ("Speedway" or "Defendant") maintained a systematic, company-wide policy of wrongfully classifying Plaintiff and other similarly-situated General Managers ("GM") or similarly-titled positions as exempt from the overtime compensation requirements of the FLSA and IMWL. Specifically, Plaintiff alleges that Defendant maintained a corporate policy and practice of misclassifying its GMs as exempt from overtime requirements despite allegations that they spent the majority of their time working either alone or with one other employee, and almost all of their time performing non-managerial tasks as other hourly-paid employees. According to the data produced by Speedway, there are a total of 163 putative collective and class members.

## I. PROCEDURAL HISTORY

Plaintiff filed her Class and Collective Action Complaint ("Complaint") on May 20, 2020, alleging Speedway wrongfully classifies its GMs and/or other similarly-titled positions as exempt from the overtime compensation requirements of the FLSA and IMWL. On March 30, 2021, the Court granted Defendant's motion to stay the matter pending resolution of an

1

earlier-filed similar case in Massachusetts, *DaRosa v. Speedway, LLC*, 19-cv-10791 (D. Mass. Apr. 22, 2019). (Dkt. No. 24). Following resolution of *DaRosa¸* the stay was lifted, and on May 13, 2022, Speedway filed a motion to dismiss certain claims as well as an Answer as to the remaining allegations. (Dkt. Nos. 30, 32, 34, 36). However, on June 2, 2022, the Court granted the Parties' joint motion to stay responsive deadline while the Parties discuss a possible resolution and further vacated the previously set briefing schedule. (Dkt. No. 44). Plaintiff filed an Amended Class and Collective Action Complaint ("Amended Complaint") on January 10, 2023, narrowing her claims solely to class and collective claims pertaining to GMs working at a Speedway store categorized as a Level 1 – Level 3 in the State of Illinois only. (Dkt. No. 56). With the filing of the Amended Complaint, the Court denied Speedway's motion to dismiss as moot. (Dkt. No. 58). The Parties subsequently engaged in limited, cost-effective voluntary discovery, including production of extensive payroll data and the Parties' respective analyses of potential liability in the event Plaintiff was to prevail on the merits of her claims. On February 6, 2023, the Court referred the matter to the Honorable Young B. Kim for discovery supervision and for a settlement conference. (Dkt. No. 61). On May 12, 2023, the Parties participated in a video settlement conference with the Honorable Judge Kim and were able to reach an agreement in principle at that time. (Dkt. No. 67). The Parties have since memorialized their agreement to settle on August 29, 2023. *See* [proposed] Settlement Agreement and Release ("Settlement Agreement" or "Settlement") (Exhibit 1).

The Parties mutually recognize and acknowledge the benefits of settling this matter. Plaintiff believes the claims asserted have merit and that the information obtained to date supports her claims. Despite the strengths of her case, Plaintiff acknowledges the risks and uncertainty associated with complex litigation, including the risk that the alleged class claims may not be certified, as well as the difficulty and delays inherent in such litigation. Plaintiff

therefore believes the Settlement is fair, reasonable, adequate, and in the best interests of her and the putative collective and class members. Defendant maintains that the claims alleged are not appropriate for class and/or collective certification, and that it has a number of meritorious defenses to the claims asserted in this action but, nevertheless, recognizes the risks and uncertainties inherent in litigation, the significant expense associated with defending class actions, the costs of any appeals, and the disruption to its business operations arising out of complex litigation. Accordingly, Defendant also believes the Settlement is in its best interest.

## II.     THE SETTLEMENT AGREEMENT

Subject to the approval of the Court, pursuant to the terms of the Settlement Agreement, and without admission of any liability, fact, claim or legal argument, Defendant has agreed to pay One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00) ("Gross Settlement Amount") to settle the case.[1] This payment includes the following components, each subject to Court Approval: payments to the Settlement Class Members ($1,149,198.90), an incentive award to the Named Plaintiff of $10,000.00, attorneys' fees to Class Counsel ($583,275.00), a cost reimbursement to Class Counsel ($627.10), and a payment to the Settlement Administrator for settlement administration costs ($6,899.00).[2]

The Settlement Class Members include the Named Plaintiff and all Level 1 – Level 3 General Managers and/or Store Leaders who worked as a General Manager and/or Store Leader for Speedway in the State of Illinois between May 20, 2017, and May 31, 2023, and do not affirmatively opt-out of or request exclusion from the Settlement. *Id.*, Exhibit 1 at ¶13(w).

---

[1] "Gross Settlement Amount" means the maximum amount that Defendant shall pay in connection with the Settlement, in exchange for the release of the Settling Class Members' Released Claims, and shall include, subject to Court approval, the Fee Award, a Service Award to the Named Plaintiff, and settlement administration costs. *Id.*, Exhibit 1 at ¶13(l).

[2] At the final approval stage, Class Counsel will file papers justifying the propriety of the requested incentive award, attorneys' fees, and cost reimbursement amounts.

According to the data produced, there are a total of 163 combined putative collective and class members and 19,874 relevant weeks in the settlement period.[3] The relevant time period is from May 20, 2017, through May 31, 2023. *Id*. at ¶13(t).

All Settlement Class Members shall be paid a Settlement Award. All Settlement Class Members will receive a *pro rata* share of the Net Settlement Amount[4] based on the total number of weeks that the respective Settlement Class Member worked for Defendant during the Relevant Time Period. *Id*. at ¶29. Specifically, the amount of $100 per Eligible Class Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Eligible Class Member so that each Eligible Class Member receives at least $100 in exchange for their release in the Settlement Agreement. *Id*. In addition to the $100 payment, each Eligible Class Member shall receive a *pro rata* portion of the Net Settlement Amount based on the number of weeks during which the Eligible Class Member worked for Defendant during the Relevant Time Period. *Id*. Each week worked will be equal to one (1) settlement share. *Id*. The total number of settlement shares for all Eligible Class Members will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. *Id*. That figure will then be multiplied by each Eligible Class Member's number of settlement shares to determine the Eligible Class Member's Settlement Award. *Id*.

---

[3] The Parties recognize the representation of the total workweeks by the class is a material term of the Settlement and if it fluctuates up, the Settlement fund will increase on a pro rata basis. The Parties agree that a deviation of more than 5% above the 19,874 workweeks would constitute a material change and additional funds above that 5% threshold would be owed. *Id*. at ¶13(w).

[4] "Net Settlement Amount" means the Gross Settlement Amount less: (1) Ten Thousand Dollars ($10,000.00) for the Named Plaintiff Atheena Wagner for her effort in bringing and prosecuting the Action ("Service Award"); (2) the payment of the Fee Award, not to exceed one third (1/3 or 33.33%) of the Gross Settlement Amount, which includes the payment of out-of-pocket costs incurred by Class Counsel; and (3) the costs related to administering this Settlement. The Parties acknowledge that all of these amounts are subject to the Court's approval. *Id*. at ¶13(o).

The individual Settlement Awards to Eligible Class Members shall be allocated as follows: one-half (50%) of Eligible Class Members' Settlement Awards will be paid as owed back wages. *Id.* at ¶32. The other half (50%) will be paid as statutory penalties and liquidated damages. *Id.* From each of the Eligible Class Members' back wages only, payroll deductions will be made by the Settlement Administrator for state and federal withholding taxes and any other applicable payroll deductions. *Id.* The Settlement Administrator will pay the amounts withheld to the appropriate taxing authorities. *Id.* at ¶33. The Settlement Administrator will issue an IRS Form W-2 for the back pay payment to each Eligible Class Member and will issue an IRS Form 1099 to each Eligible Class Member for the liquidated damages portion. *Id.*

The Settlement Agreement outlines a notice plan that will permit the Settlement Class Members to evaluate the proposed settlement and make an informed decision about whether to participate. *Id*. at ¶¶21(b)-(g), 22, 23. The proposed Settlement Notice is attached as Exhibit A to the Settlement Agreement, Exhibit 1. Under the proposed notice plan, the Settlement Administrator will disseminate a Settlement Notice to the Settlement Class Members that: (1) describes the litigation; (2) describes the proposed settlement, including the estimated value of each Settlement Class Member's respective claims and the scope of the release provided in return for the payment; (3) identifies Class Counsel; (4) discloses Class Counsel's request for an award of attorneys' fees and cost reimbursement; (5) explains the right to request exclusion from the settlement, identifies the procedures for requesting exclusion, and describes the consequences of exclusion; (6) explains the right to object to the settlement and identifies the procedure for submitting settlement objections; and (7) announces the time and location of the Final Approval Hearing.

Within fourteen (14) days after the Court's Preliminary Approval of the Settlement, Defendant shall provide the Settlement Administrator and Class Counsel an electronic database

containing the (1) names, (2) last known addresses, (3) locations and dates of employment (including respective number of weeks worked during the Relevant Time Period), (4) rates of pay and/or salaries, (5) last known telephone numbers, (6) last known email addresses (if available), and (7) social security numbers (only sent to the Settlement Administrator). *Id*. at ¶21(c). Prior to mailing the Settlement Notice, the Settlement Administrator will take reasonable efforts to identify current addresses via public and proprietary systems, including the United States Postal Service database of verifiable mailing addresses and the National Change-of-Address database. *Id*. at ¶21(d). Within ten (10) days after receiving the contact information for the Settlement Class, the Settlement Administrator shall mail and email (where available) the agreed upon and Court approved Settlement Notice to the Named Plaintiff and Settlement Class Members, and an estimate of the amount each respective Settlement Class Member will receive if he or she participates in the Settlement (*i.e.,* "Initial Mailing"). *Id*., at ¶¶13(m), 21(e). Settlement Class Members will have forty-five (45) days after the Settlement Notice is mailed and emailed (*i.e.,* "Notice Deadline") to object to or opt-out of the Settlement. *Id*. at ¶¶13(p), 22, 23.

## III. THE COURT SHOULD CERTIFY THE PROPOSED RULE 23 AND FLSA SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

Before the Court can preliminarily approve the proposed Settlement and direct notice to the Settlement Class Members, it must certify the class for settlement purposes, which requires a finding that the Court "will likely be able to certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The purpose of provisional class certification is to facilitate the distribution of notice of the terms of a proposed settlement and the date and time of the final approval hearing to all putative class members. *See Manual for Complex Litigation* (Fourth) §§ 21.632-33 (2008). District courts are given broad discretion to determine whether class certification is

appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). In the context of granting preliminary approval of the Settlement, the Court must make a threshold determination as to whether the proposed Settlement Class meets the requirements of Rule 23 by a preponderance of the evidence. *See Erica P. John Fund, Inc. v. Halliburton Co*., 131 S. Ct. 2179, 2183 (2011). "[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision." *See Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1195 (2013) (internal quotations omitted). The standard for certification of a settlement class is more lenient than the standard for certification for the purposes of litigation. Because the standards for final FLSA certification and Rule 23 class certification are similar, the analysis set out below supports the class and collective treatment of Plaintiff's claims for settlement purposes.

### A. The Proposed Settlement Class Satisfies the Requirements of Rule 23(a).

The Parties have stipulated and agreed that, for settlement purposes only, the requisites for establishing collective action certification under the FLSA pursuant to 29 U.S.C. § 216(b), and class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3) are met. *See* Settlement Agreement at ¶11 (Exhibit 1).[5]

Under Rule 23(a), the party seeking certification must demonstrate:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

*See* Fed. R. Civ. P. 23(a). Each of these requirements is satisfied here for the purpose of certifying a settlement class.

---

[5] Should this Settlement not become Final, such stipulation to collective and class certification shall become null and void and shall have no bearing on, and shall not be admissible in connection with, the issue of whether such certification would be appropriate in a non-settlement context. *Id.*

### 1. The Proposed Settlement Class Is Sufficiently Numerous.

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a) (1). "A plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1), and the court may make common sense assumptions to determine numerosity." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (citing collected Seventh Circuit cases). While there is no magic number at which joinder becomes unmanageable, courts have typically found that numerosity is satisfied when the class comprises 40 or more people. *See*, *e.g.*, *id.* (certifying a class of 120 members). Here, the Settlement Class includes 163 members, and the numerosity requirement is easily met.

### 2. The Proposed Settlement Class Meets the Commonality Requirement.

The "commonality" prerequisite mandates that there be "questions of law or fact common to the class." *See* Fed. R. Civ. P. 23(a) (2). "[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (internal quotation marks and citations omitted). Common questions exist where the "failure to pay overtime . . . resulted from a uniform, official, corporate policy of treating [the category of worker at issue] as exempt." *Kurgan v. Chiro One Wellness Centers LLC*, No. 10-cv-1899, 2014 WL 642092, at \*6 (N.D. Ill. Feb. 19, 2014); *In re Scientific Drilling International, Inc. Fair Labor Standards Act (FLSA) Litigation*, 24 F. Supp. 3d 1364, 1365 (JPML June 4, 2014) (finding two actions "unquestionably share factual questions arising out of allegations that defendant has failed to pay certain employees overtime compensation in violation of the [FLSA] and [state] wage and hour laws").

Here, Rule 23(a)(2) is satisfied for purposes of certifying a settlement class. Plaintiff asserts questions of law or fact common to the Settlement Class, including:

Whether Plaintiff worked under the same material terms and conditions of employment;

Whether Plaintiff performed the same job duties and had the same job-related responsibilities;

Whether Plaintiff was governed by materially identical policies, practices and systems concerning work hours;

Whether Plaintiff was governed by materially identical timekeeping policies, practices and systems;

Whether Plaintiff was governed by materially identical compensation policies, practices and systems; and

Whether Plaintiff was governed by the same policies, practices and systems concerning overtime hours and wages.

Because Plaintiff's claims arise from extensive common facts, they are susceptible to common proof sufficient to meet the commonality requirement.

### 3. The Proposed Settlement Class Meets the Typicality Requirement.

The third prerequisite is that the claims of a representative plaintiff be "typical" of the claims of the class. *See* Fed. R. Civ. P. 23(a) (3). In the context of certifying a settlement class, this requirement is not onerous: so long as the class and its representative present similar legal theories arising from the same event, practice, or course of conduct, the requirement is met – even if factual distinctions exist between them. Typicality examines whether there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). Where a named plaintiff's claim "arise[s] from the same events or course of conduct that gives rise to the putative class members' claims," typicality is satisfied. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). In other words, when the basis of the suit is the defendant's systematic business practices toward the named plaintiff and the members of the proposed class, typicality is generally satisfied.

Here, Plaintiff contends that she and other similarly-situated employees all shared similar job titles, training, job descriptions, job tasks, and compensation plan. *See* Amended Complaint at ¶¶14, 30. Specifically, Plaintiff, like those she seeks to represent, worked for Defendant as a GM during the Relevant Time Period at a Level 1 – Level 3 store in Illinois. *Id.* at ¶¶2, 14, 15, 19, 28, 39. Speedway maintains a GM position at all its store locations. *Id.* at ¶14. Speedway managed Plaintiff's and other similarly-situated employees' work, including the number of hours they worked, and dictated, controlled, and ratified the wage and hour and all related employee compensation policies. *Id*. at ¶¶3, 16, 18, 21, 22, 23, 26, 28, 29, 39, 53, 54, 58, 65, 67. Plaintiff and others similarly situated were misclassified by Defendant as exempt from overtime under the FLSA and IMWL and were paid on a salary-basis. *Id*. at ¶¶2, 3, 17, 31. Plaintiff's and other similarly-situated GMs' primary duties consisted of the same non-managerial responsibilities of the hourly employees at their stores including but not limited to: running the cash register, cleaning the bathrooms, cleaning the store, stocking shelves, stocking the cooler, unloading the trucks, taking out trash, and preparing food. *Id*. at ¶¶3, 20. Plaintiff asserts that the Settlement Class Members suffered similar harm (*i.e.*, denial of overtime wages for required overtime work). *Id*. at ¶¶2, 3, 4, 9, 18, 21, 22, 26, 27, 28, 29, 30, 37, 39, 45, 53, 54, 59, 65. Specifically, Defendant failed to pay Plaintiff and Settlement Class Members the requisite overtime rate of 1½ times their regular rate of pay for hours worked over 40 per week. *Id*. Because Plaintiff contends that her claims are based on the same facts and practices and grounded in the same legal theory as the other Settlement Class Members' claims, the typicality requirement is satisfied for the purpose of certifying a settlement class.

### 4.  Plaintiff and Her Counsel Will Adequately Represent the Proposed Settlement Class Members.

The fourth prerequisite to class certification is that "the representative parties will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a) (4). This requirement

is twofold: "adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members." *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014) (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584 (7th Cir. 1993)). To assess adequacy, courts examine whether "the named plaintiff has [(1)] antagonistic or conflicting claims with other members of the class; or (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Osada v. Experian Info. Sols., Inc.*, 290 F.R.D. 485, 490 (N.D. Ill. 2012) (quoting *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008)) (quotation marks omitted).

First, Plaintiff has retained counsel with significant experience and success in prosecuting class and collective actions, including multi-state wage and hour claims involving alleged misclassification of workers. *See* accompanying Declaration of Andrew C. Ficzko ("Ficzko Decl."), Exhibit 2.

Next, Plaintiff "possess[es] the same interest and suffer[ed] the same injury as the class members." *Amchem Products, Inc.*, 521 U.S. at 625–26 (internal quotation marks and citations omitted). Plaintiff has the same interests, and asserted the same type of injury, as the Settlement Class Members she seeks to represent. Plaintiff has shown herself to be an adequate representative of the class, as she devoted time and effort in prosecuting the class claims, including assisting counsel with investigating the case. Thus, Plaintiff is a member of the Settlement Class she seeks to represent and shares the same claims and interests in obtaining relief. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157–58, 157, n.13 (1982) (noting that where the claims of the class and class representatives are coextensive, there is no conflict). Therefore, for purposes of certifying a settlement class, Plaintiff meets the adequacy

requirement.

**B.      The Proposed Settlement Class Satisfies Rule 23(b)(3).**

Plaintiff must also show that this action fits into one of the categories defined in Rule 23(b). Here, Plaintiff seeks certification of the class under Rule 23(b)(3), which provides that a class action may be maintained: "if the court finds that the questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).

**1.      Predominance.**

The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.,* 521 U.S. at 623. In other words, predominance requires that common issues of law and fact predominate over individual issues. Here, Plaintiff contends that for the purpose of certifying a settlement class, common questions of law and fact predominate over any questions affecting only individual members. In particular, Plaintiff alleges Defendant paid all Settlement Class Members according to the same payment plan, and denied all of them overtime based on a determination that Settlement Class Members were exempt from the FLSA and IMWL. Thus, the predominance test is met for the purpose of certifying a settlement class, because Plaintiff shares this common question of law and fact with the Settlement Class Members and because this question can be answered with common evidence, including: the policies, systems, and procedures applicable to Plaintiff's work and how she was compensated.

**2.      Superiority.**

Rule 23(b)(3) also requires the Court to find that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Relevant considerations include:

> The class members' interests in individually controlling the prosecution or defense of separate actions;
>
> The extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> The likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23(b)(3) (A)-(D).

Here, the alternative to the class action device would be for each of the 163 Settlement Class Members to litigate their claims individually. Plaintiff submits that requiring individual litigation would result in many claims going unheard, since the amount of money any given Settlement Class Member could hope to recover most likely would not justify the pursuit of an individual lawsuit. Thus, in the context of certifying a settlement class, a class action is superior in this case because it will promote judicial economy and result in fair and consistent outcomes for all Settlement Class Members.

### C. FLSA Certification Is Also Warranted.

In the Seventh Circuit, settlements of FLSA claims must be approved by a court of competent jurisdiction. *See, e.g.*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc. v. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 7, 2001). An employee may compromise a claim under the FLSA pursuant to a court-authorized settlement of an action alleging a violation of the FLSA. *Lynn's Food Stores, Inc.*¸ 697 F.2d at 1355. When reviewing a proposed FLSA settlement, the district court should scrutinize the settlement for fairness and decide whether the proposed agreement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1353, 1355. If a settlement in an employee FLSA suit reflects a reasonable compromise over issues,

such as FLSA coverage or computation of back wages that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Woods v. NY Life Ins. Co.,* 686 F.2d 578, 579-80 (7th Cir. 1982).

## IV. THE COURT SHOULD PRELIMINARILY APPROVE THE PARTIES' PROPOSED SETTLEMENT

### A. The Legal Standard for Preliminary Settlement Approval.

Rule 23(e) requires judicial approval of all proposed class action settlements. The procedure for review of a proposed class action settlement is a familiar two-step process— preliminary and final approval—which was codified under Rule 23(e) relatively recently. Fed. R. Civ. P. 23(e) (1)-(2) (eff. Dec. 1, 2018); *see* 4 NEWBERG ON CLASS ACTIONS § 13:1 (5th ed). The first step—preliminary approval—is a pre-notification inquiry to determine whether the court "will likely be able to approve the proposal under Rule 23(e)(2)," finding that it is sufficiently fair, reasonable, and adequate. Fed. R. Civ. P. 23(e) (1)(B). In other words, at this stage, the Court needs to determine whether the proposed settlement is "within the range of possible approval" such that there is "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 & n.3 (7th Cir. 1982). Once preliminary approval is granted, class members are notified of the settlement, and the court and parties proceed to the second step: the final fairness determination. *Id.* at 621.

While "[f]ederal courts naturally favor the settlement of class action litigation," a multi-factor test must be used to determine whether the proposed settlement is likely to be found fair, reasonable, and adequate. *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D.

14

330, 345 (N.D. Ill. 2010) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)) (internal quotations omitted). Rule 23(e)(2) directs courts to consider whether: (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's-length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e) (2); *see*, *e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).[6]

### 1. Plaintiff and Proposed Class Counsel Have Adequately Represented the Settlement Class Members.

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e) (2)(A). The focus of this analysis is "on the actual performance of counsel acting on behalf of the class" throughout the litigation and in settlement negotiations. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment; *see Gumm v. Ford*, No. 5:15-cv-41-MTT, 2019 WL 479506, at *3 (M.D. Ga. Jan. 17, 2019). In considering this factor, courts are to examine whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account (i) the nature and amount of discovery completed, whether formally or informally, and (ii) the "actual outcomes" of other, similar cases. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment. Ultimately, this factor is generally satisfied where the named plaintiff

---

[6] Notably, the factors to be considered under the amended Rule 23 "overlap with the factors previously articulated by the Seventh Circuit, which include: (1) the strength of the plaintiff's case compared to the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; (5) the stage of the proceedings and the amount of discovery completed." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *2 (S.D. Ill. Dec. 16, 2018) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)); *see also* Fed. R. Civ. P. 23, Advisory Committee's Note to 2018 Amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). For this reason, decisions prior to the amendment can still provide guidance to the Court.

participated in the case diligently, and where class counsel fought hard on behalf of plaintiff and the class throughout the litigation. *See Snyder*, 2019 WL 2103379, at \*4.

Here, Plaintiff has been involved in nearly every aspect of this case, including by helping her attorneys investigate her wage and hour claims, conferring with counsel throughout the litigation, and reviewing and approving the Settlement Agreement before signing it. (Ficzko Decl. at ¶19.) Without Plaintiff stepping up to represent the class and taking on these tasks, the relief secured for the Settlement Class Members wouldn't have been possible. Given her efforts and aligned interest with the Settlement Class Members, there can be no doubt that Plaintiff has only acted in the best interest of the Settlement Class and has adequately represented them.

Likewise, proposed Class Counsel's performance in this case demonstrates that their representation has been beyond adequate, especially when considering the benefits of the Settlement to each Settlement Class Member. Class Counsel are experienced in complex class and collective action litigation and have represented clients in numerous wage and hour class and collective actions, particularly actions, like this one, that assert misclassification claims resulting in unpaid wages. *See* Stephan Zouras, LLP Firm Resume, attached as Exhibit A to Exhibit 2; *see also generally* http://www.stephanzouras.com (Class Counsel's website). By the time the Settlement was agreed to in principle, the considerable amount of information and data exchanged between the Parties ensured that Class Counsel had adequate information to assess the merits of the case and the substantial benefits to the Settlement Class the Settlement would provide. Ficzko Decl. at ¶¶7, 11, 20; *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at \*8 (N.D. Ill. July 26, 2011) (the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the court and parties have enough information "to evaluate the merits of this case"). In short, the issues in this litigation have crystallized sufficiently for Plaintiff and her counsel to assess the strengths

and weaknesses of their negotiating position and evaluate the appropriateness of any proposed resolution. *See Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546, at \*10 (N.D. Ill. Mar. 2, 2016).

Next, the monetary relief achieved by Class Counsel in the Settlement is reasonable to the potential recovery, especially when compared to similar wage and hour matters. As in all wage and hour matters, the nature and amount of recoverable damages is uncertain. Even if a trier of fact ultimately found liability, a range of possible damages exist depending on factors including, but not limited to, the Parties' and their witnesses' credibility, the limitations in the available data tracking work performed, the applicable statute of limitations, and Defendant's knowledge, willfulness, and good faith. As set forth herein., Defendant provided sufficient data for Class Counsel to determine the potential range of recovery in this case. The Settlement Agreement provides that $1,149,198.90 will be allocated among the Settlement Class Members. *See* Exhibit 1. The distribution is based on an analysis of data dating three years back from the date of filing of the original Complaint through May 31, 2023, or approximately a six-year period. To determine an equitable distribution among the Settlement Class Members, the amount of $100 for each Eligible Class Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and will be allocated to each Eligible Class Member so that they each receive at least $100 in exchange for their release in the Settlement Agreement. *Id.* at ¶29. In addition to the $100 payment, each Eligible Class Member will receive a *pro rata* portion of the Net Settlement Amount based on the number of weeks they worked as a GM and/or Store Leader for Defendant. *Id.* For example, for each week each of the Eligible Class Members worked for Defendant during the Relevant Time Period, he or she would be eligible to receive a *pro rata* portion of the Net Settlement Amount based on the number of respective weeks worked. *Id.* Each week worked during the Relevant

Time Period will be equal to one settlement share. *Id.* The total number of settlement shares for each of the Eligible Class Members will then be added together and the resulting sum be divided into the Net Settlement Amount to reach a per share dollar figure. *Id*. That figure will then be multiplied by each of the Eligible Class Members' number of settlement shares to determine their respective Settlement Award. *Id.*

All Settlement Award checks will remain valid and negotiable for one hundred twenty (120) days from the date of their issuance. *Id*. at ¶37. All uncashed Settlement Award checks that have not been executed after the 120-day period will be sent back to the Defendant. *Id.* However, if the total amount of uncashed Settlement Award checks exceeds Three Hundred Thousand Dollars ($300,000) after the initial 120-day period, there will be a second round of Settlement Award checks, with half of the total uncashed Settlement Award checks being distributed to those Eligible Class Members who negotiated their first Settlement Award Check, on a *pro rata* basis, and the remaining half sent back to Defendant. *Id.* The Settlement Administrator will then distribute any uncashed Settlement Award checks remaining from the second round of checks to the Defendant. *Id.* Sixty (60) days prior to the expiration of the Settlement Award checks, the Settlement Administrator shall mail and email (where available) a reminder postcard to all Settlement Class Members who have not cashed their checks. *Id.* at ¶ 36.

Finally, this Settlement compares favorably to other similar wage and hour matters, including the *DaRosa* matter. Here, all Eligible Class Members shall be entitled to a Settlement Award check. This is significant, as the *DaRosa* matter settled on behalf of the four named plaintiffs only, with only the four named plaintiffs being entitled to compensation for their alleged unpaid overtime wages.

If the Settlement is approved, the Settlement Class will reap its valuable benefits thanks

18

to Plaintiff's and proposed Class Counsel's hard work pursuing this case and representing their interests. This factor is well satisfied.

<b>2.     The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties.</b>

The second Rule 23(e)(2) factor looks to whether the parties negotiated the settlement at arm's-length. Fed. R. Civ. P. 23(e) (2)(B). The answer here is easy: yes. The Settlement was reached in an adversarial proceeding through arm's length negotiations between capable attorneys who have extensive experience with wage and hour claims. Plaintiff litigated this case for approximately three years, and the Parties engaged in significant voluntary discovery, including the production of payroll data as well as the Parties' respective analyses of potential liability. This information, along with their continued discussions, aided the Parties in efficiently identifying and assessing the disputed legal and factual matters at issue as well as perform the necessary calculations to determine a potential range of recovery in this case. Counsel for the Parties exchanged numerous proposals and counterproposals throughout the course of this litigation and were able to narrow the bridge between their positions. *See Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (finding no collusion or unfairness where "the parties have vigorously defended their positions throughout the litigation, participated in two prior mediations, and engaged in discovery" prior to reaching settlement). These discussions ultimately led to a settlement conference with the Honorable Judge Kim on May 12, 2023. Through the Parties' continued efforts, along with the assistance of the Honorable Judge Kim, the Parties were able to reach an agreement in principle at the settlement conference. The Parties then spent the next several weeks drafting and negotiating the finer deal points of the final Settlement Agreement before fully executing it on August 30, 2023. *See* Exhibit 1.

For these reasons, there should be no question that the Settlement Agreement was the

19

result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

### 3. The Settlement Treats All Settlement Class Members Equally.

The next Rule 23(e)(2) factor considers whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e) (2)(D). Here, given that each Settlement Class Member has nearly identical wage and hour claims for monetary relief against Defendant, the proposed Settlement treats each of them identically. In terms of monetary relief, all Eligible Class Members will receive at least $100 in exchange for their release as contemplated in the Settlement Agreement. *See* Exhibit 1 at ¶29. In addition to the $100, each Eligible Class Member will also be entitled to a *pro rata* share of the Net Settlement Amount based on the number of weeks each respective Eligible Class Member worked for Defendant during the Relevant Time Period. *Id.*; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund").

Likewise, the provision of an incentive award to the Named Plaintiff for serving as the class representative is consistent with the equitable treatment of class members. The requested $10,000 incentive award is not only modest relative to the Settlement fund that Plaintiff has helped secure for the Settlement Class, it also reflects the significant work she has done for the Settlement Class, which as described above, included conferring with counsel regularly and participating in the settlement process. Courts may make separate awards to class and/or collective representatives in recognition of their risks taken, time expended, and benefits to the class and/or collective members. *See Espenscheid v. Direct Sat USA, LLC,* 688 F.3d 872, 876-

77 (7th Cir. 2012). Named plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This is especially true in employment litigation. *See Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending [her] name to the litigation, [she] has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.") (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005)). Given that Plaintiff's efforts were key to securing the outstanding relief provided by the Settlement, the modest proposed incentive award is fully consistent with equity. Because the Settlement treats each member of the Settlement Class equitably, this factor is well satisfied.

## 4. The Relief Secured for the Settlement Class Is Adequate and Warrants Approval.

The final factor under Rule 23(e)(2) examines whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e) (2)(C). In making this determination, Rule 23 instructs courts to consider several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreements made in connection with the proposed settlement. *Id.* As explained below, each of these sub-factors demonstrate that the relief provided by the Settlement is excellent—well beyond adequate— and should be approved.

### a. The strength of Plaintiff's case and the risk of further litigation support preliminary approval.

Plaintiff contends that she was misclassified by Defendant as exempt from overtime

under the FLSA and IMWL and, as a result, Defendant failed to pay her and the Settlement Class Members the requisite overtime rate of 1½ times their regular rate of pay for hours worked over 40 per week. Rather, Defendant paid Plaintiff and the Settlement Class Members on a salary basis. Although Plaintiff believes the data and information produced to date support her claims, a fact finder could reach a different conclusion. A trier of fact might, for example, determine the Plaintiff was properly classified as exempt and was properly denied overtime wages. Without conceding that any adverse conclusions would be correct or appropriate, Plaintiff recognizes the risk of possible negative outcomes.

Also, while Plaintiff contends the claims in this case are appropriate for class certification, it is also possible that Plaintiff would not prevail on a litigated class certification motion. The Court could find, for example, that there is no common question amenable to certification, or that issues common to the putative Class are overbalanced by issues that relate to each individual Settlement Class Member's particular circumstances. This Settlement avoids that substantial uncertainty, while ensuring that the Plaintiff and Settlement Class Members receive substantial consideration in return for a release of their claims.

Finally, protracted litigation would also consume significant resources, including the time and costs associated with moving forward with briefing and arguing dispositive motions, trial, and any appeals. It is possible that "this drawn-out, complex, and costly litigation process . . . would provide Class Members with either no in-court recovery or some recovery many years from now[.]" *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011). Because the proposed Settlement offers immediate—and substantial—monetary relief to the Settlement Class Members while avoiding the need for further extensive and drawn-out litigation, preliminary approval is appropriate. *See*, *e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk,

complexity, time, and cost associated with continued litigation."). Furthermore, in the absence of the Parties' agreement, the statute of limitations would continue to erode the Settlement Class Members' FLSA claims. Thus, whatever the range of possible recovery, it is undoubtedly diminishing with the passage of time. 29 U.S.C. § 256.

> **b.** **The method of distributing relief to the Settlement Class Members is effective and supports preliminary approval.**

The next sub-factor evaluates whether the settlement's proposed method of distributing relief to the class is effective. Fed. R. Civ. P. 23(e) (2)(C)(ii). An effective class action settlement notice "usually informs class members of the time and place of the fairness hearing . . . advises class members how to register any objections and contains a copy of the proposed settlement agreement or a summary of its terms." *See Moore's Federal Practice* (Third) § 23.83[1] (1997). It is "not necessary to include all of the details of the settlement, but only to 'fairly apprise' class members of the terms of the settlement." *Id*.

Here, the Parties' proposed Settlement Notice contains all the information required to inform Settlement Class Members' decision about whether to participate in the Settlement, to object or opt-out, the time and place of the Final Approval Hearing, and includes the respective Settlement Class Member's estimate Settlement Award. *See* Exhibit A of Exhibit 1.

By mailing and emailing (where available) the Settlement Notice directly to each Settlement Class Member, the Parties are providing the best notice that can practically be given. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) ("Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."). Prior to mailing the Settlement Notice, the Settlement Administrator will take reasonable efforts to identify current addresses via public and proprietary systems, including the U.S.P.S. database of verifiable mailing addresses and the National Change-of-Address database. *See* Exhibit 1 at ¶21(d). Thereafter, the Settlement Administrator will make

reasonable efforts to track any returned pieces, obtain updated addresses, and perform any necessary re-delivery. *Id.* at ¶21(f). The Parties submit that both the content and method of dissemination of the proposed Settlement Notice fully comport with due process and the requirements of Rule 23 and the FLSA and should be approved.

### c. The terms of the requested attorneys' fees are reasonable.

The third and final relevant sub-factor[7] considers the adequacy of the relief provided to the class taking into account "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e) (2)(C)(iii). If the Settlement is preliminarily approved, proposed Class Counsel plan to petition the Court for an award of reasonable attorneys' fees after the Settlement Class has received notice of the Settlement. The Settlement's contemplated method of calculating attorneys' fees (i.e., the percentage-of-the-fund method), and its limit on attorneys' fees (*i.e.*, 33.33% of the Gross Settlement Amount) is reasonable and predicated on the outstanding relief provided to the Settlement Class Members. *See* Exhibit 1 at ¶27(b)(i). Plaintiffs who favorably settle their cases are entitled to reasonable attorneys' fees and costs under the FLSA. *See* 29 U.S.C. § 216(b) (the court "*shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of action") (emphasis added). Accordingly, that the Settlement permits the Court to award 33.33% of the Settlement in attorneys' fees is more than appropriate. Finally, if approved, the Settlement provides that attorneys' fees and out-of-pocket costs will be paid within three days after the Effective Date. *See* Exhibit 1 at ¶27(b)(i). Plaintiff and proposed Class Counsel submit that the monetary relief provided by the Settlement weighs heavily in favor of a finding that it

---

[7] The fourth sub-factor, which requires the parties to identify any side agreements made in connection with the settlement, Fed. R. Civ. P. 23(e)(2)(C)(iv), is not applicable here as the written Settlement Agreement provided to the Court represents the entirety of the Parties' proposed Settlement. (Ficzko Decl. ¶9). Since there are no side agreements to be identified, this sub-factor weighs in favor of preliminary approval.

is fair, reasonable, and adequate, and well within the range of possible approval. The Court should grant preliminary approval.

### B. The Parties' Proposed Notice Plan Merits Approval.

Rule 23 and Due Process require that for any "class proposed to be certified for purposes of settlement under Rule 23(b)(3)[,] the court must direct to class members the best notice that is practicable under the circumstances … ." Fed. R. Civ. P. 23(c) (2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a [proposed settlement, voluntary dismissal, or compromise.]" Fed. R. Civ. P. 23(e) (1). Notice may be provided to the class via "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c) (2)(B) (eff. Dec. 1, 2018). The substance of the notice to the class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23(c) (2)(B).

The Settlement Notice is written in plain, easily-understood language. The Settlement Notice will inform Settlement Class Members, prior to the Final Approval Hearing, that there is a pending Settlement, and to further inform Settlement Class Members how they may: (1) participate in the Settlement, (2) protect their rights regarding the Settlement, (3) request exclusion from the Settlement Class and the proposed Settlement, if desired, (4) object to any aspect of the proposed Settlement, if desired, and (5) participate in the Final Approval Hearing, if desired. *See* Exhibit A of Exhibit 1. The Settlement Notice makes clear the binding effect of the Settlement on all persons who do not timely request exclusion from the Settlement Class.

*Id.*

Because the proposed Settlement Notice plan effectuates notice in the best practicable manner under the circumstances and fully apprises Settlement Class Members of their rights, it comports with both Rule 23 and Due Process. Consequently, the Court should approve the Parties' proposed Settlement Notice plan.

### 1. The Court Should Appoint Analytics Consulting LLC as the Settlement Administrator.

To ensure fair and efficient administration of the Settlement, the Court should appoint Analytics Consulting LLC ("Analytics"), an experienced settlement administrator, to distribute the Settlement Notice as described herein and under the Settlement Agreement. Analytics shall be responsible for preparing, printing, mailing, and emailing the Settlement Notice to the Settlement Class Members. The Parties anticipate the costs for administration of the Settlement to be approximately $6,899.00 in order for Analytics to perform all of its administration duties as contemplated under the terms of the Settlement Agreement, including, without limitation, the following tasks: verifying the addresses of Settlement Class Members; mailing and emailing the Settlement Notice to 163 Settlement Class Members and potentially re-mailing and re-emailing returned Settlement Notices; addressing any Settlement Class Members' objections; communicating with counsel; distributing settlement checks to Settlement Class Members; establishing and administering a Qualified Settlement Fund; and providing all necessary tax forms and remittances. *See* Exhibit 1 at ¶¶21(b)-(f), 22, 23, 24, 26(a)-(b), 27(a)-(b), 32, 33, 35, 36, 37.

### 2. The Court Should Appoint Plaintiff's Counsel as Class Counsel.

Class Counsel will also fairly and adequately represent the Settlement Class. Class Counsel are highly qualified and experienced attorneys in employment law and have been designated as class counsel in dozens of other class and collective actions in state and federal

courts. *See* Ficzko Decl. at ¶5. Thus, proposed Class Counsel are adequate and have the ability and the resources to manage this lawsuit.

## V.     THE FLSA SETTLEMENT AND RELEASE ARE FAIR AND REASONABLE

The test for approval of a settlement and release of FLSA claims mirrors the Rule 23 standard. As discussed throughout this submission, the Parties have a *bona fide* dispute regarding whether GMs and Store Leaders were misclassified as exempt and therefore entitled to overtime wages, and the Settlement represents a reasonable compromise of this dispute. The Parties acknowledge and agree that, with the exception of the Named Plaintiff, only those Settlement Class Members who cash or deposit their Settlement Award check shall release their FLSA claims against Defendant and other Releasees. The Named Plaintiff shall be deemed to have released her FLSA and IMWL claims against the Defendant and other Releasees upon final approval by virtue of having executed the Settlement Agreement.

## VI.    CONCLUSION

For these reasons, the proposed Settlement should be preliminarily approved, and the proposed class and collective action should be certified for the purpose of settlement only.

Dated: September 1, 2023                    Respectfully submitted,

                                            */s/ Andrew C. Ficzko*

                                            Ryan F. Stephan
                                            James B. Zouras
                                            Andrew C. Ficzko
                                            **STEPHAN ZOURAS LLP**
                                            222 W. Adams Street, Suite 2020
                                            Chicago, IL 60606
                                            Telephone: (312) 233-1550
                                            Facsimile: (312) 233-1560
                                            rstephan@stephanzouras.com
                                            jzouras@stephanzouras.com
                                            aficzko@stephanzouras.com

                                            ***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 1, 2023, he electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

*/s/ Andrew C. Ficzko*