## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ATHEENA WAGNER, Individually and on Behalf of All Others Similarly Situated, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Case No. 1:20-cv-03014 |
| SPEEDWAY LLC | * * | |
| Defendant. | * * | |

## MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

Respectfully submitted,

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**Stephan Zouras, LLP**
222 W. Adams Street, Suite 2020
Chicago, Illinois 60606
312-233-1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

**Attorneys-In-Charge for Plaintiffs**

**Table of Contents**

INTRODUCTION ............................................................................................................1

I. PROCEDURAL HISTORY ...............................................................................2

II. THE SETTLEMENT AGREEMENT ................................................................4

III. THE COURT-APPROVED NOTICE.................................................................6

IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS...................9

    A. The Proposed Settlement Class Satisfies the Requirements of Rule 23(a)...................................................................................................9

        1. The proposed settlement class is sufficiently numerous............10

        2. The proposed class meets the commonality requirement. ..........10

        3. The proposed class meets the typicality requirement. ...............11

        4. Plaintiff and her counsel will adequately represent the proposed settlement class...........................................................13

    B. The Proposed Settlement Class Satisfies Rule 23(b)(3). ......................14

        1. The proposed settlement class meets the predominance requirement.................................................................................15

        2. The proposed settlement class meets the superiority requirement.................................................................................15

    C. FLSA Certification Is Also Warranted...................................................16

V. THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFF'S FLSA AND IMWL CLAIMS...................................................17

    A. Standard Governing Final Settlement Approval. ...................................17

        1. Plaintiff and proposed class counsel have adequately represented the settlement class members...................................19

        2. The settlement was reached as a result of arm's-length negotiations between the parties. ................................................23

        3.      The settlement treats all settlement class members equally........24

        4.      The relief secured for the settlement class is adequate and
                warrants approval. ...................................................................26

                a.      The strength of plaintiff's case and the risk of
                        further litigation support preliminary approval................26

                b.      The method of distributing relief to the settlement
                        class members is effective and supports final
                        approval........................................................................28

                c.      The terms of the requested attorneys' fees are
                        reasonable.....................................................................29

VI.     THE FLSA SETTLEMENT AND RELEASE ARE FAIR AND
        REASONABLE................................................................................30

VII.    CONCLUSION ................................................................................31

## Table of Authorities

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011)..............................17, 20

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591, 620 (1997) ............................................................................9, 14, 15

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
   133 S. Ct. 1184, 1195 (2013) ...................................................................................9

*Barnes v. Air Line Pilots Ass'n, Int'l*,
   310 F.R.D. 551 (N.D. Ill. 2015) .............................................................................10

*Beaton v. SpeedyPC Software*,
   907 F.3d 1018, 1026 (7th Cir. 2018) .....................................................................12

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ...............................................................................25

*DaRosa v. Speedway, LLC*,
   (D. Mass. Apr. 22, 2019)..........................................................................................2

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ...............................................................................................28

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179, 2183 (2011) ..................................................................................9

*Espenscheid v. Direct Sat USA, LLC*,
   688 F.3d 872 (7th Cir. 2012) .................................................................................25

*Felzen v. Andreas*,
   134 F.3d 873 (7th Cir. 1998) .................................................................................17

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) .........................................................................26

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) .................................................................................18

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147, 157–58, 157, n.13 (1982) ...............................................................14

*Gumm v. Ford*,
   No. 5:15-cv-41-MTT, 2019 WL 479506 (M.D. Ga. Jan. 17, 2019) ........................19

*In re AT & T Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011).....................................................................27

*In re Scientific Drilling International, Inc. Fair Labor Standards Act (FLSA)*
   *Litigation*, 24 F. Supp. 3d 1364, 1365 (JPML June 4, 2014) ...................................10

*Isby v. Bayh*,
   75 F.3d 1191, 1196 (7th Cir. 1996) ................................................................18, 19

*Kaufman v. Am. Express Travel Related Servs., Co.*,
   No. 07-CV-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016) .................................21

*Kurgan v. Chiro One Wellness Centers LLC*,
   2014 WL 642092, at *6 (N.D. Ill. Feb. 19, 2014)..................................................10

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*,
   2001 WL 1403007, at *6 (N.D. Ill. Nov. 7, 2001) ....................................................16
*Lynn's Food Stores, Inc. v. Dep't of Labor*,
   679 F.2d 1350, 1352-53 (11th Cir. 1982) ..........................................................16, 17
*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ................................................................................................25
*Osada v. Experian Info. Sols., Inc.*,
   290 F.R.D. 485, 490 (N.D. Ill. 2012) (quoting *Quiroz v. Revenue Prod. Mgmt., Inc.*)
*Patterson v. Stovall*,
   528 F.2d 108, 114 (7th Cir. 1976) .........................................................................17
*Ripley v. Sunoco, Inc.*,
   287 F.R.D. 300, 310 (E.D. Pa. 2012) .....................................................................16
*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011)......................................................................28
*Schulte v. Fifth Third Bank*,
   No. 09-CV-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010)..............................24
*Spano v. The Boeing Co.*,
   633 F.3d 574, 586 (7th Cir. 2011) .........................................................................12
*Starr v. Chi. Cut Steakhouse*,
   75 F. Supp. 3d 859, 874 (N.D. Ill. 2014) (quoting *Retired Chi. Police Ass'n v. City of Chi*, 7 F.3d 584 (7th Cir. 1993))...........................................................................13
*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ............................26
*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541, 2556 (2011) ..........................................................................10, 18
*Walton v. United Consumers Club, Inc.*,
   786 F.2d 303, 306 (7th Cir. 1986) .........................................................................16
*Woods v. NY Life Ins. Co.*,
   686 F.2d 578, 579-80 (7th Cir. 1982)....................................................................17
*Wright v. Nationstar Mortg. LLC*,
   No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ...............................24

**Statutes**
29 U.S.C. § 256 ...........................................................................................................28
Fair Labor Standards Act ("FLSA")...............................................................................1
Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1 ........................................1

**Rules**
Fed. R. Civ. P. 23(b)(3) .........................................................................................15, 16

**Other Authorities**
NEWBERG ON CLASS ACTIONS § 13:1 (5th ed)...............................................................18
*Moore's Federal Practice* (Third) § 23.83[1] (1997) ...................................................28

## INTRODUCTION

Atheena Wagner ("Plaintiff") submits this Motion and Memorandum of Law in Support of Plaintiff's Unopposed Motion for Final Approval of Class and Collective Action Settlement. As discussed throughout this filing, this Court should grant final approval of the Parties' proposed Settlement because it: reflects mutual compromises informed by diligent informal discovery efforts; is based on extensive, arm's length negotiations; has been strongly endorsed by the Settlement Class Members following a thorough, Court-supervised notice process; and provides the Settlement Class Members with a substantial benefit that compares favorably to the results achieved in other class and collective cases.

Following this Court's Preliminary Approval Order (Dkt. No. 86), the Settlement Administrator disseminated the Class Notice in accordance with the Court's Order. No objections to nor requests for exclusion from the Settlement have been received by any of the Settlement Administrator, nor Plaintiff's counsel, nor Defense counsel. Under these circumstances, Final Approval of the Settlement should be granted.

This matter involves a putative collective and class action lawsuit for alleged non-payment of required overtime and other remedies, brought under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1. Plaintiff alleges Defendant Speedway LLC ("Speedway" or "Defendant") maintained a systematic, company-wide policy of wrongfully classifying Plaintiff and other similarly-situated General Managers ("GM") or similarly-titled positions as exempt from the overtime compensation requirements of the FLSA and the IMWL. Plaintiff contends Defendant maintained a corporate policy and practice

of misclassifying its GMs as exempt from overtime requirements despite allegations that they spent the majority of their time working either alone or with only one other employee, and almost all of their time performing non-managerial tasks as other hourly-paid employees. According to the data produced by Speedway, there are a total of 163 putative collective and class members.

## I.    PROCEDURAL HISTORY

On May 20, 2020, Plaintiff filed her original Class and Collective Action Complaint alleging Speedway wrongfully classifies its GMs and other similarly-titled positions as exempt from the overtime compensation requirements of the FLSA and IMWL. On March 30, 2021, the Court granted Speedway's motion to stay the Action pending resolution of a similar earlier-filed case in Massachusetts, *DaRosa v. Speedway, LLC,* 19-cv-10791 (D. Mass. Apr. 22, 2019). (Dkt. No. 24). Following resolution of *DaRosa*, the Court lifted the stay, and on May 13, 2022, Speedway filed a motion to dismiss certain claims as well as an Answer as to the remaining allegations. (Dkt. Nos. 30, 32, 34, 36). However, on June 2, 2022, the Court granted the Parties' joint motion to stay responsive deadline while the Parties discuss a possible resolution, and further vacated the previously set briefing schedule. (Dkt. No. 44).

On January 10, 2023, Plaintiff filed an Amended Class and Collective Action Complaint ("Amended Complaint") narrowing her claims solely to class and collective claims pertaining to GMs working at a Speedway store categorized as a Level 1 – Level 3 in the State of Illinois only. (Dkt. No. 56). With the filing of the Amended Complaint, the Court denied Speedway's motion to dismiss as moot. (Dkt. No. 58). Thereafter, the Parties engaged in limited, cost-effective voluntary discovery, including the production

of extensive payroll data and the Parties' respective analyses of potential liability in the event Plaintiff was to prevail on the merits of her claims. On February 6, 2023, the Court referred the matter to the Honorable Judge Young B. Kim for discovery supervision and for a settlement conference. (Dkt. No. 61). On May 12, 2023, the Parties participated in a video settlement conference with Honorable Judge Kim and were able to reach an agreement in principle at that time. (Dkt. No. 67). The Parties memorialized their agreement to settle on August 29, 2023. *See* Settlement Agreement and Release ("Settlement Agreement" or "Settlement") (Exhibit 1).

Both Parties recognize and acknowledge the benefits of settling this Action. Plaintiff considers the claims asserted to have merit and further believes the information obtained to date supports her claims. Despite the strengths of her case, Plaintiff acknowledges the risks and uncertainties associated with complex litigation, including the risk that the alleged class claims may not be certified, as well as the difficulty and delays inherent in such litigation. Therefore, Plaintiff believes the Settlement is fair, reasonable, adequate, and in the best interests of her and the putative collective and class members.

Speedway believes the claims alleged are not appropriate nor superior for class certification or collective certification as litigated matters, and that it has a number of meritorious defenses to the claims asserted in this Action but, nevertheless, recognizes the risks and uncertainties inherent in litigation, the significant expense associated with defending class actions, the cost of any appeals, and the disruption to its business operations arising out of complex litigation. Therefore, Speedway also believes the

Settlement is in its best interest and this matter is appropriate for class and collective certification in the context of Settlement.

## II.     THE SETTLEMENT AGREEMENT

Pursuant to the terms of the Settlement Agreement, and without admission of any liability, fact, claim or legal argument, Speedway has agreed to pay a maximum of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00) ("Gross Settlement Amount") to settle this Action.[1] This payment includes the following components, each subject to Court approval: payments to the Settlement Class Members ($1,149,166.52), a Service Award to the Named Plaintiff of $10,000.00, attorney's fees to Class Counsel ($583,275.00), a cost reimbursement to Class Counsel ($659.48), and a payment to Analytics Consulting LLC ("Analytics" or "Settlement Administrator") for settlement administration costs ($6,899.00). *Id*. at ¶13(l).[2]

The Settling Class Members include the Named Plaintiff and all Level 1 – Level 3 General Managers and/or Store Leaders who worked as a General Manager and/or Store Leader for Speedway in the State of Illinois between May 20, 2017, and May 31, 2023, and do not affirmatively opt-out of or request exclusion from the Settlement. *Id*. at ¶13(w). According to the data produced, there are a total of 163 combined putative collective and class members and 19,874 relevant weeks in the settlement period. The Relevant Time Period is from May 20, 2017, through May 31, 2023. *Id*. at ¶13(t).

---

[1] "Gross Settlement Amount" means the maximum amount that Defendant shall pay in connection with the Settlement, in exchange for the release of the Settlement Class Members' Released Claims, and shall include, subject to Court approval, the Fee Award, a Service Award to the Named Plaintiff, and all settlement administration costs. *Id*., Exhibit 1 at ¶13(l).

[2] Class Counsel will file a motion for the approval of the requested Service Award, Fee Award, and the settlement administration expenses contemporaneously with the instant motion.

All Eligible Class Members shall be paid a Settlement Award. All Eligible Class Members will receive a *pro rata* share of the Net Settlement Amount[3] based on the total number of weeks that the respective Eligible Class Member worked for Defendant during the Relevant Time Period. *Id*. at ¶29. The amount of $100 per Eligible Class Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Eligible Class Member so that each Eligible Class Member receives at least $100 in exchange for their release described in the Settlement. *Id*. In addition to the $100 payment, each Eligible Class Member shall receive a *pro rata* portion of the Net Settlement Amount based on the number of weeks during which the Eligible Class Member worked for Defendant during the Relevant Time Period. *Id*. Each week worked will be equal to one (1) settlement share. *Id*. The total number of settlement shares for all Eligible Class Members will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. *Id*. That figure will then be multiplied by each Eligible Class Member's respective number of settlement shares to determine the Eligible Class Member's Settlement Award. *Id*.

The individual Settlement Awards to Eligible Class Members shall be allocated as follows: one-half (50%) of Eligible Class Members' Settlement Awards will be paid as owed wages (which shall be subject to required withholdings and deductions and

---

[3] "Net Settlement Amount" means the Gross Settlement Amount less: (1) Ten Thousand Dollars ($10,000.00) for the Named Plaintiff Atheena Wagner for her effort in bringing and prosecuting the Action ("Service Award"); (2) the payment of the Fee Award, not to exceed one third (1/3 or 33.33%) of the Gross Settlement Amount, plus all out-of-pocket costs incurred by Class Counsel; and (3) the costs related to administering the Settlement. The Parties recognize that all these amounts are subject to the Court's approval. *Id*. at ¶13(o).

reported as wage income), and the remaining fifty percent (50%) payment shall be allocated as statutory penalties and liquidated damages (which shall not be subject to withholdings and deductions and shall be reported as non-wage income). *Id*. at ¶32 The Settlement Administrator will pay the amounts withheld to the appropriate taxing authorities. *Id.* at ¶33. The Settlement Administrator will issue an IRS Form W-2 for the back pay payment to each Eligible Class Member and will issue an IRS Form 1099 to each Eligible Class Member for the liquidated damages portion. *Id*.

## III. THE COURT-APPROVED NOTICE

On October 25, 2023, this Court granted Plaintiff's Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement, approved the form and content of the proposed Notice, approved the proposed notice process, ordered the Parties to proceed with this process, and appointed Analytics Consulting LLC as Settlement Administrator to distribute the Notice pursuant to the terms of the Settlement Agreement. *See* Order (Dkt. No. 86).

On or about October 27, 2023, Defendant provided Analytics with an electronic database containing: (1) names, (2) last known addresses, (3) respective number of weeks worked during the Relevant Time Period, (4) rates of pay and/or salaries, (5) last known telephone numbers, (6) last known email addresses (where available), and (7) social security numbers. *See* Declaration of Settlement Administrator Regarding Notice ("Analytics Decl.", ¶4 (Exhibit 2)). Prior to mailing the Settlement Notice, Analytics took reasonable efforts to identify current addresses via public and proprietary systems including cross-referencing the Settlement Class Members' mailing addresses with the United States Postal Service National Change of Address database and prepared an

individual copy of the Court-approved Notice for each Class Member. *Id*. at ¶¶5-6. The Notice was mailed and e-mailed (where available) to Class Members on November 8, 2023. *Id*. at ¶¶6-7. Thereafter, Analytics tracked all returned and undeliverable Notices, made reasonable efforts to search for updated addresses, and performed all necessary re-delivery services. Through the date of its declaration, Analytics states two Notices were returned by the U.S. Postal Service with a forwarding address. *Id.* at ¶8. Analytics updated the Class List with the forwarding addresses and processed a re-mail of the Notice to the updated addresses. *Id*. Through the date of its declaration, Analytics states 13 Notices were returned by the U.S. Postal Service without a forwarding address. *Id*. at ¶9. Analytics conducted a skip trace in an attempt to ascertain a valid address for the affected Settlement Class Members. *Id*. Analytics subsequently updated the Class List with the eight new addresses it secured and re-mailed the Notice to each of those addresses. *Id*. One of the re-mailed Notices was returned as undeliverable. *Id*. All 163 Settlement Class Members received at least one form of direct Notice via mail or email. *Id*. at ¶10.

The Settlement Notice provided the Settlement Class Members an opportunity to evaluate the proposed Settlement and make an informed decision about whether to participate and provided the following: (1) a description of the lawsuit; (2) a description of the proposed Settlement, including the estimated value of each Settlement Class Member's respective claims and the scope of the release provided in return for the payment; (3) the identity of Class Counsel; (4) the disclosure of Class Counsel's request for an award of attorneys' fees and cost reimbursement; (5) an explanation of the right

to request exclusion from the Settlement, the procedures for requesting exclusion, and the consequences of exclusion; (6) an explanation of the right to object to the Settlement and the procedure for submitting Settlement objections; and (7) the time and location of the Final Approval Hearing. *See* Settlement Notice, attached as Exhibit A to the Declaration of Settlement Administrator Regarding Notice.

According to the Notice, the last day for any Class Member to object to or opt-out from the Settlement was December 23, 2023. As of January 15, 2024, ***Analytics has not received any objections to the Parties' proposed Settlement, nor any requests to be excluded from the Settlement.*** *See* Exhibit 2, ¶¶11-12. Following dissemination of the Court-approved Settlement Notice, Class Counsel have not received any objections to the proposed Settlement, any requests to be excluded from the proposed Settlement, or any complaints about the terms of the proposed Settlement from any Settlement Class Member. *See* Andrew C. Ficzko Declaration, ¶12 (Exhibit 3). Moreover, since Analytics disseminated the Settlement Notice, Class Counsel have not received any communications alerting them to any Settlement Class Member's interest in bringing a separate, individual lawsuit on the theories pled in the matter, or received notice of any such filings. *Id*.

The actions described above show that the Settlement Class Members' due process rights have been fulfilled because Analytics has made reasonable efforts to provide the Settlement Class Members with notice of the proposed Settlement, the Parties have provided the Settlement Class Members with a reasonable period of time to evaluate the proposed Settlement, and the Court-approved Notices contained

sufficient information to allow Settlement Class Members to make an informed decision about whether to participate in the proposed Settlement as well as access to sufficient procedures for seeking more information, objecting to the proposed Settlement, or excluding themselves from the proposed Settlement.

## IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

To justify class certification, a plaintiff must demonstrate that the requirements of Rule 23 have been met by a preponderance of the evidence. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2183 (2011). "[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision." *See Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1195 (2013) (internal quotations omitted).[4] As discussed below, the instant case satisfies all the necessary requirements to certify a settlement class and the Settlement should be granted final approval.

### A. The Proposed Settlement Class Satisfies the Requirements of Rule 23(a).

Under Rule 23(a), a party seeking certification must demonstrate four things:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

*See* Fed. R. Civ. P. 23(a). As discussed below, each of these requirements is satisfied here for the purposes of certifying a settlement class.

---

[4] The standard for certifying a settlement class is lower than for a litigation class, since there are no manageability concerns. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### 1. The proposed settlement class is sufficiently numerous.

To certify a class for settlement purposes, it must be "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). In determining whether the numerosity requirement has been satisfied, "[a] plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1), and the court may make common sense assumptions to determine numerosity." *Barnes v. Air Line Pilots Ass'n, Int'l,* 310 F.R.D. 551 (N.D. Ill. 2015) (citing collected Seventh Circuit cases). While there is no magic number at which joinder becomes unmanageable, courts have typically found that numerosity is satisfied when the class comprises 40 or more people. *See, e.g., id.* (certifying a class of 120 members). Defendant has confirmed that there is a total of 163 Settlement Class Members. *See* Exhibit 1, ¶13(w) (including attached Katie Forsythe Declaration). Since it is impracticable to join this many individual plaintiffs in a single lawsuit, *see* Fed. R. Civ. P. 23(a)(1), the numerosity requirement is satisfied.

### 2. The proposed class meets the commonality requirement.

The "commonality" prerequisite examines the existence of "questions of law or fact common to the class." *See* Fed. R. Civ. P. 23(a)(2). "[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Common questions exist where the "failure to pay overtime . . . resulted from a uniform, official, corporate policy of treating [the category of worker at issue] as exempt." *Kurgan v. Chiro One Wellness Centers LLC*, 2014 WL 642092, at *6 (N.D. Ill. Feb. 19, 2014); *In re Scientific Drilling International, Inc. Fair Labor Standards Act (FLSA) Litigation*, 24 F. Supp. 3d 1364, 1365 (JPML June 4, 2014)

(finding two actions "unquestionably share factual questions arising out of allegations that defendant has failed to pay certain employees overtime compensation in violation of the [FLSA] and [state] wage and hour laws").

Rule 23(a)(2) is satisfied in this Action for purposes of certifying a settlement class. Plaintiff asserts questions of law or fact common to the Settlement Class, including:

> Whether Plaintiff and the Settlement Class worked under the same material terms and conditions of employment;

> Whether Plaintiff and the Settlement Class performed the same job duties and had the same job-related responsibilities;

> Whether Plaintiff and the Settlement Class were governed by materially identical policies, practices, and systems concerning work hours;

> Whether Plaintiff and the Settlement Class were governed by materially identical timekeeping policies, practices, and systems;

> Whether Plaintiff and the Settlement Class were governed by materially identical compensation policies, practices, and systems; and

> Whether Plaintiff and the Settlement Class were governed by the same policies, practices, and systems concerning overtime hours and wages.

Because Plaintiff alleges that the claims of the proposed Settlement Class are based on the same policies and practices that led to their classification as exempt and their failure to receive overtime premium wages for overtime hours worked, their claims are susceptible to common proof sufficient to meet the commonality requirement.

### 3. The proposed class meets the typicality requirement.

Rule 23(a) requires the claims of a representative plaintiff to be "typical" of the claims of the class. *See* Fed. R. Civ. P. 23(a)(3). In the context of certifying a settlement class, this requirement is not onerous: so long as the class and its representative present

similar legal theories arising from the same event, practice, or course of conduct, the requirement is met – even if factual distinctions exist between them. Typicality examines whether there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.,* 633 F.3d 574, 586 (7th Cir. 2011). Where a named plaintiff's claim "arise[s] from the same events or course of conduct that gives rise to the putative class members' claims," typicality is satisfied. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). Thus, when the basis of the matter is the defendant's systematic business practice toward the named plaintiff and the members of the proposed class, typicality is generally satisfied.

Plaintiff alleges she shared similar job titles, training, job descriptions, and job duties. *See* Amended Complaint at ¶¶14, 30. Specifically, Plaintiff, like those she seeks to represent, worked for Speedway as a GM or Store Leader during the Relevant Time Period at a Level 1 – Level 3 store in Illinois. *Id.* at ¶¶2, 14, 15, 19, 28, 39. Speedway maintains a GM and/or Store Leader position at all its store locations. *Id.* at ¶14. Speedway managed Plaintiff's and other similarly-situated employees' work, including the number of hours they worked, and dictated, controlled, and ratified the wage and hour and all related employee compensation policies. *Id*. at ¶¶3, 16, 18, 21, 22, 23, 26, 28, 29, 39, 53, 54, 58, 65, 67. Plaintiff and others similarly situated were misclassified by Defendant as exempt from overtime under the FLSA and IMWL and were paid on a salary-basis. *Id*. at ¶¶2, 3, 17, 31. Plaintiff and other similarly-situated employees' primary duties consisted of the same non-managerial responsibilities of the hourly

employees at their stores including but not limited to: running the cash register, cleaning the bathrooms, cleaning the store, stocking shelves, stocking the cooler, unloading the trucks, taking out trash, and preparing food. *Id.* at ¶¶3, 20. Plaintiff asserts that the Settlement Class Members suffered similar harm (*i.e.*, denial of overtime wages for required overtime work). *Id.* at ¶¶2, 3, 4, 9, 18, 21, 22, 26, 27, 28, 29, 30, 37, 39, 45, 53, 54, 59, 65. Specifically, Defendant failed to pay Plaintiff and Settlement Class Members the requisite overtime rate of 1½ times their regular rate of pay for hours worked over 40 per week. *Id.* Because Plaintiff contends that her claims are based on the same facts and practices and grounded in the same legal theory as the other Settlement Class Members' claims, the typicality requirement is satisfied for the purpose of certifying a settlement class.

### 4. Plaintiff and her counsel will adequately represent the proposed settlement class.

Rule 23(a) also requires that "the representative parties will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). This requirement considers the "adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members." *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014) (quoting *Retired Chi. Police Ass'n v. City of Chi*, 7 F.3d 584 (7th Cir. 1993)). To assess adequacy, courts examine whether "the named plaintiff has [(1)] antagonistic or conflicting claims with other members of the class; or (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Osada v. Experian*

*Info. Sols., Inc.,* 290 F.R.D. 485, 490 (N.D. Ill. 2012) (quoting *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008)) (quotation marks omitted).

Plaintiff has retained counsel with significant experience and success in prosecuting class and collective actions, including multi-state wage and hour claims involving alleged misclassification of workers. *See* Andrew C. Ficzko Declaration, ¶¶4-5 (Exhibit 3).

Furthermore, Plaintiff "possess[es] the same interest and suffer[ed] the same injury as the class members." *Amchem Products, Inc.*, 521 U.S. at 625–26 (internal quotation marks and citation omitted). Plaintiff has the same interests, and asserted the same type of injury, as the Settlement Class she seeks to represent. Plaintiff has shown herself to be an adequate representative of the Class, as she devoted time and effort in prosecuting the class claims, including assisting counsel with investigating the case. Thus, Plaintiff is a member of the Settlement Class she seeks to represent and shares the same claims and interests in obtaining relief. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157–58, 157, n.13 (1982) (noting that where the claims of the class and class representatives are coextensive, there is no conflict). Therefore, for purposes of certifying a settlement class, Plaintiff meets the adequacy requirement.

**B.    The Proposed Settlement Class Satisfies Rule 23(b)(3).**

Plaintiff must also show that this Action fits into one of the categories defined in Rule 23(b). Here, Plaintiff seeks certification of the class under Rule 23(b)(3), which provides that a class action may be maintained: "if the court finds that the questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).

### 1. The proposed settlement class meets the predominance requirement.

The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.,* 521 U.S. at 623. Predominance requires that common issues of law and fact predominate over individual issues. Plaintiff alleges that for the purpose of certifying a settlement class, common questions of law and fact predominate over any questions affecting only individual members. Specifically, Plaintiff contends Defendant paid all Class Members according to the same payment plan, and denied all of them overtime based on a determination that Class Members were exempt from the FLSA and IMWL. Thus, the predominance test is met for the purpose of certifying a settlement class because Plaintiff shares this common question of law and fact with the Settlement Class Members and because this question can be answered with common evidence, including: the policies, systems, and procedures applicable to Plaintiff and Class Members' work and how they were compensated.

### 2. The proposed settlement class meets the superiority requirement.

Rule 23(b)(3) also requires the Court to examine four considerations to assess whether allowing a class action is superior to other available methods for fairly and efficiently adjudicating the parties' controversy, including:

The class members' interests in individually controlling the prosecution or defense of separate actions;

The extent and nature of any litigation concerning the controversy already begun by or against class members;

> The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> The likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23(b)(3)(A)-(D). The superiority analysis requires courts to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 310 (E.D. Pa. 2012) (citation omitted).

In this matter, the alternative to the class action device would be for each of the 163 Settlement Class Members to litigate their claims individually. Plaintiff respectfully submits that requiring individual litigation would result in many claims going unheard, since the amount of money any given Settlement Class Member could hope to recover most likely would not justify the pursuit of an individual lawsuit. Therefore, in the context of certifying a settlement class, a class action is superior in this case because it will promote judicial economy and result in fair and consistent outcomes for all Settlement Class Members.

### C. FLSA Certification Is Also Warranted.

In the Seventh Circuit, settlements of FLSA claims must be approved by a court of competent jurisdiction. *See, e.g., Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc. v. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Ladegaard v. Hard Rock Concrete Cutters, Inc.,* 2001 WL 1403007, at *6 (N.D. Ill. Nov. 7, 2001). An employee may compromise a claim under the FLSA pursuant to a court-authorized settlement of an action alleging a violation of the FLSA. *Lynn's Food Stores, Inc.,* 697 F.2d at 1355. When considering a

proposed FLSA settlement, the district court should scrutinize the settlement for fairness and decide whether the proposed agreement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1353, 1355. If a settlement in an employee FLSA matter reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Woods v. NY Life Ins. Co.,* 686 F.2d 578, 579-80 (7th Cir. 1982).

## V.  THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFF'S FLSA AND IMWL CLAIMS

### A.  Standard Governing Final Settlement Approval.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,* 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts examine the fairness,

reasonableness, and adequacy of a settlement in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citations omitted); *see Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also* Alba Conte, Herbert B. Newberg, *Newberg on Class Action* § 11.41 (4th ed.) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The procedure for review of a proposed class action settlement is a two-step process—preliminary and final approval—which was recently codified under Rule 23(e). Fed. R. Civ. P. 23(e)(1)-(2) (eff. Dec. 1, 2018). The first step—preliminary approval—is a pre-notification inquiry to determine whether the court "will likely be able to approve the proposal under Rule 23(e)(2)," finding that it is sufficiently fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(B). At the preliminary approval stage, the Court needs to determine whether the proposed settlement is "within the range of possible approval" such that there is "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 & n.3 (7th Cir. 1982). Once preliminary approval is granted, class members are notified of the settlement, and the court and parties proceed to the second step: the final fairness determination. *Id.* at 621.

While "[f]ederal courts naturally favor the settlement of class action litigation," a multi-factor test must be used to determine whether the proposed settlement is likely to be found fair, reasonable, and adequate. *In re AT & T Mobility Wireless Data Servs.*

*Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby,* 75 F.3d at 1196 (7th Cir. 1996)) (internal quotations omitted). Rule 23(e)(2) directs courts to consider whether: (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's-length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see*, *e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019)

As set forth in detail below, the proposed Settlement is fair, reasonable, and adequate under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the provisions of the FLSA and IMWL and thus should be approved.

### 1. Plaintiff and proposed class counsel have adequately represented the settlement class members.

The first factor of Rule 23(e)(2) takes into consideration whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). This analysis considers "the actual performance of counsel acting on behalf of the class" throughout the litigation and in settlement negotiations. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. When considering this factor, courts are tasked with examining whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account (i) the nature and amount of discovery completed, whether formally or informally, and (ii) the "actual outcomes" of other, similar cases. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment. This factor is generally satisfied where the named plaintiff participated in the case diligently, and where class counsel fought hard on behalf of

plaintiff and the class throughout the litigation. *See Snyder*, 2019 WL 2103379, at *4.

Plaintiff has been actively involved in just about every aspect of this case, including helping her attorneys investigate her wage and hour claims, conferring with counsel throughout the litigation, and reviewing and approving the Settlement Agreement before signing it. *See* Andrew C. Ficzko Declaration, ¶22. Absent Plaintiff's efforts, the relief secured for the Settlement Class Members wouldn't have been possible. Given her efforts and aligned interest with the Settlement Class Members, there can be no doubt that Plaintiff has only acted in the best interest of the Settlement Class Members and has more than adequately represented them.

Similarly, Class Counsel's performance in this case demonstrates that their representation has been beyond adequate, especially when considering the benefits of the Settlement to each Eligible Class Member. Class Counsel are experienced in complex class and collective action litigation and have represented clients in numerous wage and hour class and collective actions, including matters similar to this one, that assert misclassification claims resulting in unpaid wages. *See* Stephan Zouras, LLP Firm Resume, attached to Exhibit 3; *see also generally* http://www.stephanzouras.com (Class Counsel's website). By the time the Settlement was agreed to in principle, the considerable amount of information and data exchanged between the Parties ensured that Class Counsel had adequate information to assess the merits of the case and the substantial benefits to the Settlement Class Members that the Settlement would provide. *See* Andrew C. Ficzko Declaration, ¶13; *see also Am. Int'l Grp., Inc.,* 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (the standard "is not whether it is conceivable

that more discovery could possibly be conducted" but whether the court and parties have enough information "to evaluate the merits of this case"). Thus, the issues in this Action have materialized sufficiently for Plaintiff and her counsel to assess the strengths and weaknesses of their negotiating position and evaluate the appropriateness of any proposed resolution. *See Kaufman v. Am. Express Travel Related Servs., Co.*, 2016 WL 806546, at *10 (N.D. Ill. Mar. 2, 2016).

Furthermore, the monetary relief achieved by Class Counsel in the Settlement is more than reasonable to the potential recovery, especially when compared to similar wage and hour matters. As in all wage and hour matters, the nature and amount of recoverable damages is uncertain. Even if a trier of fact ultimately found liability, a range of possible damages exist depending on factors including, but not limited to, the Parties' and their witnesses' credibility, the limitations in the available data tracking work performed, the applicable statute of limitations, and Defendant's knowledge, willfulness, and good faith. As noted herein, Defendant provided sufficient data for Class Counsel to determine the potential range of recovery in this Action. The Settlement Agreement provides that $1,149,166.52 will be allocated among the Settlement Class Members. *See* Exhibit 1. The distribution is based on an analysis of data dating three years back from the date of filing of the original Complaint through May 31, 2023, or approximately a six-year period. To determine the equitable distribution among the Settlement Class Members, the amount of $100 for each Eligible Class Member will be deducted from the Net Settlement Amount prior to the calculation of *pro rata* individual settlement shares and will be allocated to each Eligible Class

Member so that they each receive at least $100 in exchange for their release as fully described in the Settlement Agreement. *See* Exhibit 1, ¶29. In addition to the $100 payment, each Eligible Class Member will receive a *pro rata* portion of the Net Settlement Amount based on the number of weeks they worked as a GM and/or Store Leader for Defendant. *Id.* For example, for each week the Eligible Class Members worked for Defendant during the Relevant Time Period, he or she will be eligible to receive a *pro rata* portion of the Net Settlement Amount based on the number of respective weeks worked. *Id.* Each week worked during the Relevant Time Period will be equal to one settlement share. *Id.* The total number of settlement shares for each of the Eligible Class Members will then be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. *Id.* That figure will then be multiplied by each of the Eligible Class Members' number of settlement shares to determine their respective Settlement Award. *Id.*

All Settlement Award checks will remain valid and negotiable for one hundred twenty (120) days from the date of their issuance. *Id.* at ¶37. All uncashed Settlement Award checks that have not been executed after the 120-day period will be sent back to the Defendant. *Id.* However, if the total amount of uncashed Settlement Award checks exceeds Three Hundred Thousand Dollars ($300,000) after the initial 120-day period, there will be a second round of Settlement Award checks, with half of the total uncashed Settlement Award checks being distributed to those Eligible Class Members who negotiated their first Settlement Award check, on a *pro rata* basis, and the remaining half sent back to Defendant. *Id.* The Settlement Administrator will then distribute any

uncashed Settlement Award checks remaining from the second round of checks to the Defendant after the second 120-day period. *Id.* Sixty (60) days prior to the expiration of the Settlement Award checks, the Settlement Administrator shall mail and email (where available) a reminder postcard to all Settlement Class Members who have not cashed their checks. *Id.* at ¶ 36.

Finally, the Settlement here compares overwhelmingly favorable to other similar wage and hour matters, including the *DaRosa* matter. In this matter, all Eligible Class Members shall be entitled to a Settlement Award check. This is significant because the *DaRosa* matter settled on behalf of the four named plaintiffs only, with only the four named plaintiffs being entitled to compensation for their alleged unpaid overtime wages.

If the Court grants final approval of this Settlement, all Eligible Class Members will reap its valuable benefits thanks to Plaintiff's and Class Counsel's hard work pursuing this case and representing their interests. This factor is well satisfied.

### 2. The settlement was reached as a result of arm's-length negotiations between the parties.

The second factor of Rule 23(e)(2) considers whether the parties negotiated the settlement at arm's-length. Fed. R. Civ. P. 23(e)(2)(B). Here, the Settlement was reached in an adversarial proceeding through arm's length negotiations between capable attorneys who have extensive experience with wage and hour claims. Plaintiff litigated this case for over three years, and the Parties engaged in significant voluntary informal discovery, including the production of payroll data as well as the Parties' respective analyses of potential liability. This information, along with their continued discussions, aided the Parties in efficiently identifying and assessing the disputed legal and factual

matters at issue as well as perform the necessary calculations to determine a potential range of recovery in this case. Counsel for the Parties exchanged numerous proposals and counterproposals throughout the course of this litigation and were able to narrow the bridge between their positions. *See Wright v. Nationstar Mortg. LLC*, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (finding no collusion or unfairness where "the parties have vigorously defended their positions throughout the litigation, participated in two prior mediations, and engaged in discovery" prior to reaching a settlement). The Parties' discussions ultimately led to a settlement conference with the Honorable Judge Kim on May 12, 2023. Through the Parties' continued efforts, along with the assistance of Judge Kim, the Parties were able to reach an agreement in principle at the settlement conference. The Parties then spent the next several weeks drafting and negotiating the finer deal points of the Settlement Agreement before fully executing it on August 30, 2023. *See* Exhibit 1.

There should be no serious dispute that the Settlement Agreement was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, 2010 WL 8816289, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered"). This factor is also satisfied.

### 3. The settlement treats all settlement class members equally.

The next factor of Rule 23(e)(2) takes into account whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Given that each Settlement Class Member has nearly identical wage and hour claims for monetary relief against Defendant, the proposed Settlement treats each

24

of them identically. In terms of monetary relief, all Eligible Class Members will receive at least $100 in exchange for their release as contemplated in the Settlement Agreement. *See* Exhibit 1, ¶29. In addition to the $100, each Eligible Class Member shall also receive a *pro rata* share of the Net Settlement Amount based on the number of weeks each respective Eligible Class Member worked for Defendant during the Relevant Time Period. *Id.*; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund").

Similarly, the provision of a Service Award to the Named Plaintiff for serving as the class representative is consistent with the equitable treatment of class members. The requested $10,000 Service Award is not only modest relative to the Settlement fund that Plaintiff helped secure for the Settlement Class, it also reflects the significant work Plaintiff has done for the Settlement Class, which as described above, included conferring with counsel regularly and participating in the settlement process. Courts may make separate awards to class and/or collective representatives in recognition of their risks taken, time expended, and benefits to the class and/or collective members. *See Espenscheid v. Direct Sat USA, LLC,* 688 F.3d 872, 876-77 (7th Cir. 2012). Representative plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This is especially true in employment litigation. *See Velez v. Majik*

*Cleaning Serv., Inc.,* 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending [her] name to the litigation, [she] has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.") (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005)). Thus, Plaintiff's efforts were key to securing the outstanding relief provided by the Settlement and the modest proposed Service Award is fully consistent with equity. Because the Settlement treats the Settlement Class equitably, this factor is well satisfied.

### 4. The relief secured for the settlement class is adequate and warrants approval.

The final Rule 23(e)(2) factor considers whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e) (2)(C). In making this determination, Rule 23 instructs courts to consider several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreements made in connection with the proposed settlement. *Id.* As explained below, each of these sub-factors demonstrate that the relief provided by the Settlement is excellent and should be approved.

### a. The strength of plaintiff's case and the risk of further litigation support preliminary approval.

Plaintiff alleges she was misclassified by Speedway as exempt from overtime under the FLSA and IMWL and, as a result, Speedway failed to pay her and the Settlement Class Members the requisite overtime rate of 1½ times their regular rate of pay for all hours worked over 40 per week. Rather, Speedway paid Plaintiff and the

Settlement Class Members on a salary basis. Although Plaintiff believes the data and information produced to date support her claims, a fact finder could reach a different conclusion. A trier of fact might, for example, determine that Plaintiff was properly classified as exempt and was properly denied overtime wages. Without conceding that any adverse conclusions would be correct or appropriate, Plaintiff recognizes the risk of possible negative outcomes.

Next, while Plaintiff contends the claims in this case are appropriate for class and collective certification, it is also possible that Plaintiff would not prevail on a litigated certification motion. The Court could find, for example, that there is no common question amenable to certification, or that issues common to the putative Class are overbalanced by issues that relate to each individual Settlement Class Member's particular circumstances. This Settlement avoids that substantial uncertainty, while ensuring that the Plaintiff and Eligible Class Members receive substantial consideration in return for the release of their claims.

Finally, protracted litigation would also consume significant resources, including the time and costs associated with moving forward with briefing and arguing dispositive motions, trial, and any appeals. It is possible that "this drawn-out, complex, and costly litigation process . . . would provide Class Members with either no in-court recovery or some recovery many years from now[.]" *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011). Because the proposed Settlement offers immediate substantial monetary relief to the Eligible Class Members while avoiding the need for further extensive and drawn-out litigation, final approval is appropriate. *See*, *e.g.*, *Schulte v.*

*Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). In the absence of the Parties' agreement, the statute of limitations would continue to erode the Settlement Class Members' FLSA claims. Thus, whatever the range of possible recovery, it is undoubtedly diminishing with the passage of time. 29 U.S.C. § 256.

### b. The method of distributing relief to the settlement class members is effective and supports final approval.

The next sub-factor considers whether the Settlement's method of distributing relief to the class was effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). An effective class action settlement notice "usually informs class members of the time and place of the fairness hearing . . . advises class members how to register any objections and contains a copy of the proposed settlement agreement or a summary of its terms." *See Moore's Federal Practice* (Third) § 23.83[1] (1997). It is "not necessary to include all of the details of the settlement, but only to 'fairly apprise' class members of the terms of the settlement." *Id*.

The Parties' Settlement Notice in this matter contained all the necessary information required to inform Settlement Class Members' decision about whether to participate in the Settlement, to object or opt-out, the time and place of the Final Approval Hearing, and included the respective Settlement Class Member's estimated Settlement Award. *See* Notice.

By mailing and emailing (where available) the Settlement Notice directly to each Settlement Class Member, the Parties provided the best notice that can practicably be given. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) ("Individual notice

must be sent to all class members whose names and addresses may be ascertained through reasonable effort."). Prior to mailing the Settlement Notice, the Settlement Administrator took reasonable efforts to identify current addresses via public and proprietary systems, including cross-referencing the Settlement Class Member addresses with the U.S. Postal Service National Change-of-Address database and updated the Class List with any new addresses that were identified from the database. *See* Exhibit 2, ¶5. Thereafter, the Settlement Administrator made reasonable efforts to track any returned pieces, obtain updated addresses, and perform any necessary re-delivery. *Id.* at ¶¶8-9. The Parties submit that both the content and method of dissemination of the Settlement Notice fully comported with due process and the requirements of Rule 23 and the FLSA, and this motion should receive final approval.

### c. The terms of the requested attorneys' fees are reasonable.

The third and final relevant sub-factor[5] considers the adequacy of the relief provided to the class taking into account "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e) (2)(C)(iii). Contemporaneously with this motion, Class Counsel will petition the Court for an award of reasonable attorneys' fees and costs, a Service Award to the Named Plaintiff, and settlement administration expenses. The Settlement's contemplated method of calculating attorneys' fees (*i.e.,* the percentage-of-the-fund method), and its limit on attorneys' fees

---

[5] The fourth sub-factor, which requires the parties to identify any side agreements made in connection with the settlement, Fed. R. Civ. P. 23(e)(2)(C)(iv), is not applicable here as the written Settlement Agreement provided to the Court represents the entirety of the Parties' proposed Settlement. (Andrew C. Ficzko Declaration, ¶10). Since there are no side agreements to be identified, this sub-factor weighs in favor of preliminary approval.

(*i.e.,* 33.33% of the Gross Settlement Amount) is reasonable and predicated on the outstanding relief provided to the Eligible Class Members. *See* Exhibit 1, 27(b)(i). A plaintiff who favorably settles their case is entitled to reasonable attorneys' fees and costs under the FLSA. *See* 29 U.S.C. § 216(b) (the court "*shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of action") (emphasis added). Accordingly, the Fee Award requested in this matter is more than appropriate. Finally, if finally approved, the Settlement provides that attorneys' fees and out-of-pocket costs will be paid within three days after the Effective Date. *See* Exhibit 1, ¶27(b)(i). Plaintiff and Class Counsel submit that the monetary relief provided by the Settlement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and well within the range of possible approval. The Court should grant final approval.

## VI. THE FLSA SETTLEMENT AND RELEASE ARE FAIR AND REASONABLE

The test for approval of a settlement and release of FLSA claims mirrors the Rule 23 standard. As discussed throughout this submission, the Parties have a *bona fide* dispute regarding whether GMs or other similarly-titled positions were properly classified as exempt employees, or whether they are instead owed overtime wages, and the Settlement represents a reasonable compromise of this dispute. The Parties acknowledge and agree that, with the exception of the Named Plaintiff, only Eligible Class Members who cash or deposit their Settlement Award check shall release their FLSA claims against Speedway and the other Releasees. The Named Plaintiff shall be deemed to have released her FLSA and IMWL claims against the Defendant and the

other Releasees upon Final Approval by virtue of having executed the Settlement Agreement.

## VII.   CONCLUSION

The Parties' Settlement was reached only after significant, informal discovery and arm's-length negotiations by experienced lawyers. It provides a fair result for all Eligible Class Members and has received overwhelming support. The Parties have thoroughly investigated the issues of law and fact presented in this case and both Parties believe the Settlement is favorable to the continued litigation of Plaintiff's claims. Nothing in the Parties' negotiations, or in the Settlement Agreement, provides any basis for doubting the fairness of their compromise. For the reasons detailed herein, and in the accompanying documents, Plaintiff respectfully submits that the Parties' proposed Settlement is reasonable and deserving of Final Approval through entry of the proposed Order, attached hereto as Exhibit 4.

Dated: January 16, 2024                    Respectfully submitted,

*/s/ Andrew C. Ficzko*

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**STEPHAN ZOURAS LLP**
222 W. Adams Street, Suite 2020
Chicago, IL 60606
Telephone: (312) 233-1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

***Counsel for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 16, 2024, he electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

*/s/ Andrew C. Ficzko*